### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

_____

BRENDA RYAN, individually and on behalf
of all others similarly situated,

              Plaintiff,

v.

STRAIGHT ARROW PRODUCTS, INC.,

              Defendant.

Case No.   1:21-cv-04485

**ORAL ARGUMENT REQUESTED**

---

### MEMORANDUM OF LAW IN SUPPORT OF STRAIGHT ARROW PRODUCTS, INC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P 12(B)(6)

---

SMITHAMUNDSEN LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200
(312) 894-3210 (fax)

*Attorneys for Defendant,*
*Straight Arrow Products, Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

I.      RELEVANT FACTS AS ALLEGED ................................................................... 2

II.     LEGAL STANDARD ............................................................................................ 4

III.    ARGUMENT ......................................................................................................... 5

        A.     All of Plaintiff's Claims Fail as a Matter of Law ................................... 5

                1.     Plaintiff's Claims are Preempted by the Food, Drug, and Cosmetic Act ................................................................................................... 5

                2.     The Representations At Issue Are Non-Actionable "Puffing" Statements, Not Verifiable or Falsifiable Statements of Fact ..................... 9

                3.     Plaintiff Has Not Plausibly Alleged That The Representation At Issue Are False; Her Conclusory Assertions To That Effect Are Non-Sequiturs ........................................................................................ 11

        B.     Plaintiff's Claims Each Fail For Additional Reasons As Well ............................. 13

                1.     New York Law Bars Plaintiff's Unjust Enrichment Claim (Count VII) ............................................................................................. 13

                2.     Plaintiff's Breach of Warranty Claims Fails Because She Lacks Privity with Straight Arrow And Because She Never Requested a Refund (Counts I and II) ............................................................................. 14

                3.     Plaintiff Cannot State Claims Under The Consumer Fraud Acts or For Fraud (Counts III-VI) Because No Reasonable Consumer Would Have Been Misled By The Statements At Issue ............................. 16

                4.     Plaintiff's Fraud Claims Fail Because She Has Not Sufficiently Alleged that Straight Arrow Intended to Deceive ..................................... 19

                5.     Plaintiff lacks Standing to Seek Injunctive Relief .................................... 20

IV.    CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Bungee Intern. Mfg. Corp.*, 44 F.Supp.2d 534 (S.D.N.Y. 1999) ................................9

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................4, 12

*Bank of New York Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*,
    2011 WL 2610661 (S.D.N.Y. Jun. 27, 2011) ............................................................4

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ....................................................4

*Berni **v.** Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020) ........................................20, 21

*Beth Israel Medical Center v. Verizon Business Network Services, Inc.*,
    Case No. 11 Civ. 4509(RJS), 2013 WL 1285210 (S.D.N.Y. Mar. 18, 2013)............13, 17

*Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386 (E.D.N.Y. 2017)....................13

*Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555 (S.D.N.Y. 2016) ........................13

*Carcone v. Gordon Hearing & Air Conditioning Co.*, 212 A.D. 2d,
    1017 (N.Y.App., 4th Dep't 1995) .........................................................................14

*Clapper v. Amnesty Intern. USA*, 568 U.S. 398 (2013) ..........................................20

*Cohen v. Koenig*, 25 F.3d 1168 (2d Cir. 1994)........................................................9

*Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177 (N.Y. 2012)..................................13

*Crichter v. L'Oreal USA, Inc.*, 959 F.Supp. 31 (2d Cir. 2020)...........................6, 7, 8

*Daley v. McNeil Consumer Products Co., a div. of McNeil-PPC, Inc.*,
    164 F.Supp.367 (S.D.N.Y. 2001) ........................................................................18

*DiBartolo v. Abbott Laboratories*, 914 F.Supp.2d 601 (S.D.N.Y 2012) ....................14

*Ebin v. Kangadis Food Inc.*, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ..................5

*Eidman v. Walgreen Co.*, 522 F.Supp.3d 634 (N.D. Cal. 2021)..................................5

*Federal Trade Commission v. Alcoholism Cure Corporation,*,
    2011 WL 13137951 (M.D. Fla. Sept. 16, 2011) ......................................................11

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395 (2d Cir. 2015)............17, 19

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013)...........................................................17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
 528 U.S. 167 (2000)..................................................................................................................20

*Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314 (2002).......................................................17

*Greenberg v. Chrust*, 282 F.Supp.2d 112 (S.D.N.Y 2003) .......................................................9, 10

*Hamilton Exhibition, LLC v. Imagine Exhibitions, Inc.*,
 2019 WL 2590639  (S.D.N.Y. Jun. 11, 2019) ..........................................................................9

*Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453 (S.D.N.Y. 2020) .................................14

*Holstein v. City of Chicago,* 29 F.3d 1145 (7th Cir.1994)...........................................................16

*J McAteer v. Target Corporation*, Case No. 18-349 (DWF/LIB),
 2018 WL 3597675  (D. Minn. Jul 26, 2018) ...........................................................................10

*Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*,
 778 F.3d 390 (2d Cir. 2015)......................................................................................................20

*Kaempfe v. Lehn & Fink Prods. Corp.*, 21 A.D.2d 197 (N.Y. App, 1st Dep't 1964) .................18

*Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274 (S.D.N.Y. 2014).......................................15

*Kommer v. Bayer Consumer Health*, 710 Fed. App'x 43 (2d Cir. 2018) ....................................20

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) ...........................................................5

*L–7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419 (2d Cir. 2011) ...............................................4

*Lanovaz v. Twinings N. Am. Inc.*, 726 Fed. App'x 590 (9th Cir. 2018) .......................................21

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995).......................................................................10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
 797 F.3d 160 (2d Cir. 2015)........................................................................................................5

*McAteer v. Target Corporation*, Case No. 18-349 (DWF/LIB),
 2018 WL 3597675 (D. Minn. Jul 26, 2018) .............................................................10, 11, 16

*McCauley v. Trans Union, L.L.C.,* 402 F.3d 340 (2d Cir. 2005).................................................16

*Nasca v. GC Services Ltd. Fartnership*,
 2002 WL 31040647 (S.D.N.Y. Sept. 12, 2002)........................................................................16

iii

*Pelman v. McDonald's Corp.*, 237 F.Supp.2d 512 (S.D.N.Y. 2003) .............................................9

*Pfitzer v. Smith & Wesson Corp.*, 2014 WL 636381 (E.D. Mo. Fe. 18, 2014)............................10

*Price v. L'Oréal USA, Inc.*,
    2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017) .........................................................................13

*Randy Knitwear, Inc. v. American Cyanamid Co.*, 181 N.E.2d 399 (N.Y. 1962) ........................15

*Reich v. Mitrani*, 268 A.D.2d 256 (N.Y App., 1st Dep't 2000).....................................................9

*Rodriguez v. Cheesecake Factory Incorporated*,
    2017 WL 6541439 (S.D.N.Y. Aug. 11, 2017) .....................................................................17

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000).........................................................................4

*Rugg v. Johnson & Johnson*,  2018 WL 3023493 (N.D. Cal. June 18, 2018) ........................18, 21

*S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629 (2d Cir. 1996) .............16, 17

*Silva v. Hornell Brewing Co.*, No. 20-CV-756,
    2020 WL 4586394 (E.D.N.Y. Aug. 10, 2020).................................................................13, 14

*Souter v. Edgewell Personal Care Co.*, 2021 WL 3892670 (S.D. Cal. June 7, 2021) .................18

*Stern v. Satra Corp.*, 539 F.2d 1305 (2d Cir. 1976) ..............................................................10, 18

*Suarez v. Natural Living , Inc.*, 2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019).............................15

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) ..................................10

*U.S. Bank Nat. Ass'n v. PHL Variable Ins., Co*,
    2013 WL 791462 (S.D.N.Y. Mar. 5, 2013) ...........................................................................9

*Wallace v. SharkNinja Operating, LLC*, 2020 WL 1139649 (N.D. Cal. Mar. 9, 2020) ...............21

*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283 (S.D.N.Y. 2015).......................................13

*Wiegel v. Stork Craft Mfg., Inc.*, 891 F.Supp.2d 941 (N.D.Ill.2012)...........................................16

*Wurtzburger v. Ky. Fried Chicken*,
    2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017) .......................................................................17

*Young v. L'Oreal USA, Inc.*, 2021 WL 2295625 (S.D.N.Y. May 20, 2021)
(adopted by 2021 WL 2292341 (S.D.N.Y. Jun. 4, 2021) .........................................................7, 20

## FEDERAL STATUTES

21 U.S.C. §§ 301, *et seq.*...................................................................................2, 5

21 U.S.C. § 379...................................................................................................6

44 U.S.C. § 1507................................................................................................5

## FEDERAL REGULATIONS

21 C.F.R. § 701, *et seq.*..............................................................................5, 7, 8

21 C.F.R. § 740, *et seq.*....................................................................................8

## FEDERAL RULES

Fed. R. Civ. P. 9(b)............................................................................................5

Fed. R. Civ. P. 12(b)(6).....................................................................................2

Fed. R. Civ. P. 12(b)(1)....................................................................................16

Fed. R. Evid. 201(b)(2)......................................................................................5

## STATE STATUTES

N.Y. U.C.C. § 2-313...........................................................................................9

N.Y. Gen. Bus. Law § 349.................................................................6, 13, 14, 16

N.Y. Gen. Bus. Law § 350.................................................................6, 13, 14, 17

## OTHER PUBLICATIONS

DeGroot, Van Joost, Bos, Harrie Van Der Meeren, and Weyland, "Patch test reactivity to DMDM hydantoin, Relationship to formaldehyde allergy." (*Contact Dermatitis,* 1998, 18:197-201). .................................................................................................12, 18

https://www.atsdr.cdc.gov/formaldehyde/ ................................................12

https://www.fda.gov/cosmetics/cosmetic-ingredients/allergens-cosmetics................................6, 8

Defendant Straight Arrow Products, Inc. ("Straight Arrow") submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff's Amended Complaint relies entirely on the argument that DMDM hydantoin, a common preservative, is "dangerous and unsafe for sale as over-the-counter ultra-cleansing and nourishing shampoo and conditioner products." (Dkt. # 28, ¶ 3). Based on this purported danger, Plaintiff asserts that Straight Arrow "failed to warn consumers about possible reactions" and "failed to warn consumers of the risks and dangers attended to the use of such a strong ingredient on their hair and scalp." (Dkt # 28, ¶¶ 4, 15). All of Plaintiff's claims are based on her underlying argument about the dangers of DMDM hydantoin and her corollary premise that the labels of cosmetics containing DMDM hydantoin are false or misleading if they do not have a warning about potential allergic reactions. The crux of Plaintiff's Complaint is that a cosmetic manufacturer has a duty to warn consumers if its product includes DMDM hydantoin. (See Dkt # 28, ¶¶ 4, 15, 16, 22, 67, 68, 76).

However, the U.S. Food and Drug Administration (FDA) disagrees with Plaintiff's premises. The FDA is well aware that hundreds of products on the market have used DMDM hydantoin over the years. For example, "by 1987, DMDM hydantoin (or 'DMDMH') was included in approximately 115 product formulas filed with the FDA, appearing most frequently in shampoos." (Dkt # 28, ¶ 46). Despite that awareness, the FDA has never imposed any requirement that these shampoos or other products contain any warning on the label regarding DMDM hydantoin. See 21 C.F.R. § 740.1(b). The issue of DMDM hydantoin's danger is within the particular expertise of the FDA, as is the issue of whether the labels of cosmetics containing

DMDM hydantoin should require a warning to that effect. For that reason, the Food, Drug, and Cosmetic Act, 21 U.S.C., §§ 301, *et seq*, ("FDCA") expressly preempts the relief Plaintiff requests. These issues should be resolved by that agency under federal law, not by this Court under state law.

Even if the Court determines it can and should consider the issue, Plaintiff has no valid cause of action because she has not plausibly identified any false statement of fact under New York law. Indeed, Plaintiff has not even identified any verifiable or falsifiable statement of fact made by Straight Arrow at all – just a variety of puffing statements that she never claims are actually false. Further, even if the statements at issue could be falsified, they are not of the nature that any reasonable consumer would be misled by them. As multiple Courts have explained, reasonable consumers understand that any given drug or cosmetic may cause allergic or other adverse reactions – that fact does not render otherwise-true marketing statements about those products misleading or false. In any event, Plaintiff has not plausibly alleged that the statements at issue are false.

Accordingly, this Court should dismiss Plaintiff's Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## I.     RELEVANT FACTS AS ALLEGED

Straight Arrow manufactures and sells Mane 'n Tail branded shampoo and conditioner products, and has for decades. (Dkt. # 28, ¶ 30). Four of Straight Arrow's products contain DMDM hydantoin, a preservative that is commonly used in cosmetic products. (Id., ¶¶ 10, 43, 46). DMDM hydantoin is a "formaldehyde-releasing preservative" or "FRP", which means it releases small

amounts of formaldehyde over time.[1] (Id., ¶¶ 43, 45).

Because it releases some formaldehyde, DMDM hydantoin may cause dermatitis in patients allergic to formaldehyde. (Id. ¶ 49). The U.S. Food & Drug Administration ("FDA") has identified DMDM hydantoin as one of the most frequent sources of allergic reactions from the use of cosmetic products. (Id., ¶ 57). However, despite the fact that the FDA has affirmatively recognized DMDM hydantoin as an allergen, Plaintiff does not allege that the FDA has issued any regulations or guidance with respect to labeling of products containing DMDM hydantoin. (See Id, generally).

On September 12, 2020, Plaintiff Brenda Ryan purchased Mane 'n Tail branded Gentle Clarifying Shampoo ("the Shampoo") at American Outlet in New York City. (Id., ¶ 103). The Shampoo is one of Straight Arrow's products containing DMDM hydantoin. (Id. ¶ 1). The label on the Shampoo bottle expressly disclosed that the Shampoo contained DMDM hydantoin. (Id., ¶ 10). The label also indicated that the Shampoo "contained a gentle cleaning and replenishing formula that restores, revitalizes and reconditions for a naturally clean scalp and healthy hair," along with other similar claims about the product (Id.). Shortly after using the Shampoo, Plaintiff noted scalp irritation, hair loss, and other symptoms consistent with dermatitis caused by an allergic reaction to DMDM hydantoin. (Id., ¶ 106). Nevertheless, Plaintiff continued using the Shampoo for two months. (Id., ¶ 107).  The 45-page complaint is also devoid of any factual allegations regarding the concentration of DMDM hydantoin in the Shampoo, let alone any allegation that the concentration exceeded any applicable safety standard established by any public entity or private trade association anywhere in the world. (See Id., generally). The Complaint also

---

[1] For reference, the amount of formaldehyde released by common shampoos containing DMDM hydantoin is roughly equivalent to the amount that naturally occurs in a medium-sized apple or pear. https://www.webmd.com/beauty/dmdm-hydantoin-what-to-know

does not allege that the product at issue released any more formaldehyde than other common household products.

Plaintiff now complains that she "reasonably expected that the Product she purchased would and could not cause scalp irritation or hair loss" and that Straight Arrow "would make a disclosure to consumers as soon as it determined there was a widespread problem[.]" (Id., ¶ 109). Plaintiff asserts that Straight Arrow "has continuously failed to warn consumers about possible reactions" and "failed to properly warn consumers of the risks and dangers attendant to the use of such a strong ingredient on their hair and scalp." (Id., ¶¶ 4, 15). Despite conceding that DMDM hydantoin is a commonly used preservative, Plaintiff has not identified a single product in the market that contains the warning she asks this Court to impose.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility…depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

The Second Circuit has "deemed a complaint to include…any statements or documents incorporated in it by reference[.]" *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). Accordingly, "[i]n deciding a motion to dismiss, this Court may consider the full text of documents that are quoted in or attached to the complaint[.]" *Bank of New York Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*, 2011 WL 2610661, at *3 (S.D.N.Y. Jun. 27, 2011). The Court "may

also consider matters of which judicial notice may be taken under Fed. R. Evid. 201." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). This includes facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.*, quoting Fed. R. Evid. 201(b)(2). In particular, "[t]he contents of the Federal Register shall be judicially noticed[.]" 44 U.S.C. § 1507. "Documents published on government-run websites are proper for judicial notice given their reliability" as well. *Eidman v. Walgreen Co.*, 522 F.Supp.3d 634, 642 (N.D. Cal. 2021).

With respect to her fraud claim, Plaintiff "must satisfy the heightened pleading standard set forth in Rule 9(b)" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). That standard requires Plaintiff to "state with particularity the circumstances constituting fraud[.]" *Id.*, quoting Fed. R. Civ. P. 9(b).

## III.   ARGUMENT

### A.   <u>All of Plaintiff's Claims Fail as a Matter of Law.</u>

#### 1.   *Plaintiff's Claims are Preempted by the Food, Drug, and Cosmetic Act.*

As Plaintiff correctly notes, federal law requires the Shampoo's label to comply with the Food, Drug, and Cosmetic Act, 21 U.S.C., §§ 301, *et seq.*, (the "FDCA") and regulations promulgated by the Food and Drug Administration pursuant to it, published at 21 C.F.R. §§ 701 *et seq.* (Dkt. # 28, ¶¶ 95, 98). While admitting that the Shampoo's label disclosed that the Shampoo contained DMDM hydantoin, Plaintiff nevertheless asserts that Straight Arrow had an additional duty to warn that the Shampoo could cause negative side effects. (See Dkt # 28, ¶¶ 4, 15, 16, 22, 67, 68, 76). Plaintiff does not cite any provision of the FDCA or its implementing regulations for the proposition that a cosmetic label must affirmatively and prominently state that one of its

ingredients is a potential allergen or may otherwise cause negative side effects – because there is no such provision in federal law.

To the contrary, the FDA's website informs consumers that "the best way to prevent an allergic reaction is to know what you are sensitive to and how to avoid it."[2] "One way to accomplish this is by carefully reading the product ingredient panel and avoiding ingredients you know or think you are allergic to." *Id.*  Because federal law does not support her request, Plaintiff seeks to use state law (specifically N.Y. Gen. Bus. Law §§ 349-350 and common law claims for fraud and unjust enrichment) to create a labeling requirement that does not exist under the FDCA or its implementing regulations. Plaintiff's effort is expressly preempted by the FDCA

"In enacting the FDCA in 1938, Congress set out to provide some national uniformity to the manufacture and sale of cosmetics…which until that point had been regulated exclusively by the various laws of the states." *Crichter v. L'Oreal USA, Inc.*, 959 F.Supp. 31, 34 (2d Cir. 2020). In accordance with the goal of national uniformity, the FDCA expressly preempts the use of state law to impose labeling requirements that are additional to or different from those specifically applicable under federal law, stating:

> no State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter, the Poison Prevention Packaging Act of 1970 (15 U.S.C. 1471 et seq.), or the Fair Packaging and Labeling Act (15 U.S.C. 1451 et seq.).

21 U.S.C. § 379s(a).

---

[2] See https://www.fda.gov/cosmetics/cosmetic-ingredients/allergens-cosmetics#consumers, under the heading "What Consumers Can Do" (Last visited July 27, 2021). This website is cited in the Complaint and incorporated by reference therein. (Dkt. # 28, ¶¶ 57-58).

Last year, the Second Circuit expressly held that the FDCA's preemption clause "bars Plaintiffs from seeking to impose additional or different labeling requirements through their state-law claims, especially where Congress and the FDA have already provided for specific labeling requirements." *Crichter*, 959 F.Supp. at 38. In reaching that determination, the Second Circuit observed that "[t]he FDCA established a comprehensive regulatory scheme governing, among other things, the ingredients, packaging, and marketing of cosmetic products." *Id.*, at 35. Applying its Congressionally delegated authority, "the FDA has promulgated rules regarding what must be included on labels" and has "therefore stated, with specificity, what information is necessary to avoid misleading consumers." *Id.* Applying that ruling, this Court recently adopted the Report & Recommendation of Magistrate Judge Katharine H. Parker to dismiss with prejudice a complaint asserted under state law regarding the contents of a product label. *Young v. L'Oreal USA, Inc.*, Case No. 1:21-cv-00446-GHW, 2021 WL 2292341 (S.D.N.Y. Jun. 4, 2021), adopting 2021 WL 2295625 (S.D.N.Y. May 20, 2021). Judge Parker's Report & Recommendation noted that "any state law that would require labeling that is not identical with the FDCA's requirements is expressly preempted." 2021 WL 2295625, at * 6.

Here, the FDA has specifically promulgated regulations requiring that cosmetic labels "bear a declaration of the name of each ingredient in descending order of prominence[.]" 21 C.F.R. § 701.3(a). "The declaration shall appear on any appropriate information panel in letters not less than 1/16 of an inch in height and without obscuring design, vignettes, or crowding." 21 C.F.R. § 701.3(b). Plaintiff concedes that Straight Arrow complied with this requirement by disclosing DMDM hydantoin as an ingredient. (Dkt. # 28, ¶ 10).

The FDA has adopted several other specific requirements for cosmetic product labels as well.  It has adopted rules requiring cosmetic manufacturers to display "a declaration of the net

quantity of contents" which "shall be expressed ... in terms of fluid measure if the cosmetic is liquid or in terms of weight if the cosmetic is solid, semisolid, or viscous." *Id.* at 35 (quoting 21 C.F.R. § 701.13(a)).  It has also adopted other rules specifying: (1) where the declaration of the net quantity of contents should be placed on the label, (2) in what typeface it should be displayed, and (3) in what units of measurement it should be calculated.  *Id.* (citing 21 C.F.R. 701.13(e), (h), (j)-(p)).[3]  Plaintiff does not allege that Straight Arrow failed to comply with any of these labeling requirements, either.

The FDA has *not*, however, promulgated any rule requiring the additional warning demanded by Plaintiff. FDA regulations outline a specific procedure for establishing that a warning statement is required with respect to a particular cosmetic. 21 C.F.R. § 740.1. Under that procedure, the Commissioner of Food and Drugs may publish a proposal to establish or amend a regulation prescribing a warning for a cosmetic. 21 C.F.R. § 740.1(b). Under the existing code, there are six such regulations – none of which is for products containing DMDM hydantoin specifically or allergens more generally. *See Id*.

Under *Crichter*, Plaintiff's effort to use state law to create an additional labeling requirement for cosmetics would undermine Congressional intent "to create a national and uniform regulatory scheme for cosmetics" and is expressly preempted by the FDCA. 959 F.Supp. at 35. As a result, her Amended Complaint should be dismissed.

---

[3] With respect to allergens in cosmetic products in particular, the FDA is actively engaged with the issue.  See https://www.fda.gov/cosmetics/cosmetic-ingredients/allergens-cosmetics.  Specifically, the FDA has focused on: (1) monitoring of adverse event reporting; (2) conducting scientific research on the mechanisms of allergic reactions and how allergens interact with the body's immune system; and (3) conducting research on consumer practices, the frequency of adverse reactions, and consumer awareness of allergens in cosmetics.  *Id.*  With respect to consumer practices, the FDA is conducting consumer surveys and focus groups to collect information regarding: (1) how consumers use cosmetics; (2) how often consumers experience an adverse reaction from the use of cosmetics with potential allergens; (3) how aware are consumers of the presence of allergens in cosmetics; and (4) what actions (if any) do consumers take to avoid allergens in cosmetics.  *Id.*

### 2. The Representations At Issue Are Non-Actionable "Puffing" Statements, Not Verifiable or Falsifiable Statements of Fact.

Even if the Court were to reach the merits of this case instead of deferring to the FDA, Plaintiff has not identified any statements that are capable of being proven true or false, let alone any that are actually false. Instead, Plaintiff complains that the Shampoo label contained certain non-quantifiable general statements that are not capable of being proved or disproved, such as that it contains a "gentle cleansing and replenishing formula." Such statements are "mere puffery" and are "not actionable if alleged" under Sections 349 or 350 of the New York General Business Law. *Pelman v. McDonald's Corp.*, 237 F.Supp.2d 512, 528 (S.D.N.Y. 2003). The Second Circuit has similarly confirmed that "statements will not form the basis of a fraud claim when they are mere 'puffery' or are opinions as to future events." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994). New York law likewise provides there can be no warranty claim based on puffing statements. *Anderson v. Bungee Intern. Mfg. Corp.*, 44 F.Supp.2d 534, 541 (S.D.N.Y. 1999), citing N.Y. U.C.C. § 2-313(2).

"Where a representation is subject to varying interpretations depending upon varying standards different persons use, classic puffery is involved." *U.S. Bank Nat. Ass'n v. PHL Variable Ins., Co*, 2013 WL 791462, at *6 (S.D.N.Y. Mar. 5, 2013)(citation omitted). "'Puffing' has been described as making generalized or exaggerated statements such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *Hamilton Exhibition, LLC v. Imagine Exhibitions, Inc.*, 2019 WL 2590639, at *3 (S.D.N.Y. Jun. 11, 2019). Representations constituting puffery "are 'not actionable representations of fact'" under New York law. *Greenberg v. Chrust*, 282 F.Supp.2d 112, 120 (S.D.N.Y 2003), citing *Reich v. Mitrani*, 268 A.D.2d 256, 701 N.Y.S.2d 368, 369 (1st Dep't 2000).

The category of non-actionable puffing statements includes "[s]ubjective claims about products, which cannot be proven either true or false." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007), citing *Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995). "Courts have found parties' assessment of their own abilities and successes to be non-actionable statements of opinion when rendered in good faith." *Greenberg v. Chrust*, 282 F.Supp.2d 112, 121 (S.D.N.Y 2003). "Value, quality, fitness, success, are usually understood as meaning no more than that the objects conform with the declarant's individual yardstick in such matters." *Stern v. Satra Corp.*, 539 F.2d 1305, 1308 (2d Cir. 1976). "While he may make it clear that his reference is to some commonly accepted measure, ordinarily he does not, and his hearer takes it for more at his peril." *Id.*

Particularly relevant here: "representations about the gentleness of [a product] are non-specific, unquantifiable, and subjective" and therefore constitute non-actionable puffery that is properly dismissed at the pleadings stage. *McAteer v. Target Corporation*, Case No. 18-349 (DWF/LIB), 2018 WL 3597675, *5 (D. Minn. Jul 26, 2018). Representations that a product is "safe and dependable" have similarly been deemed to be non-actionable, subjective statements about the value of goods rather than an objective statement of fact that could induce reliance by a reasonable consumer. *Pfitzer v. Smith & Wesson Corp.*, 2014 WL 636381, at *3 (E.D. Mo. Fe. 18, 2014).

The *McAteer* case is directly on point. In that case, Target sold McAteer makeup remover wipes that it represented would, among other things, "gently remove[] makeup, even waterproof mascara." 2018 WL 3597675, at *1. Similar to Plaintiff here, McAteer "experienced a burning sensation and her face turned bright red." *Id.* Despite McAteer's allergic reaction, the Court found that she could not state a misrepresentation claim based on the "gentle" representation, or any of

Target's other marketing statements, because they "lack[] an empirical benchmark to provide any indicia of measurability." *Id.*, at *4 (citation omitted, brackets in original). The same is true here, and the same result is appropriate. Because the word "gentle" and similar descriptions cited by Plaintiff have no empirical benchmark, no reasonable consumer would rely on them in making a purchase decision, and they cannot form the basis of a claim for fraud or breach of warranty.

> **3.  *Plaintiff Has Not Plausibly Alleged That The Representations At Issue Are False; Her Conclusory Assertions To That Effect Are Non-Sequiturs.***

Plaintiff ostensibly complains that the Shampoo caused an allergic reaction, but she does *not* allege that Straight Arrow claimed the Shampoo was hypoallergenic – because it did not. Plaintiff does allege that Straight Arrow claimed the Shampoo would provide a clean scalp and healthy hair, but she never alleges the Shampoo failed to do that. (Dkt. # 28, ¶ 88). More importantly, Plaintiff never alleges that the Shampoo *could not* provide a clean scalp and healthy hair, nor that it failed to do so for other people. While the negative side effects Plaintiff allegedly suffered are unfortunate, they are not inconsistent with any of the marketing statements identified in the Complaint and therefore provide no basis for Plaintiff's claims.

When a product's marketing materials make representations about the capabilities of the product, the relevant question is not whether each and every consumer obtained the benefits of those capabilities. Rather, "[a]n advertisement that makes an objective product claim, containing affirmative information about a product's attributes, performance or efficacy, implies support by a reasonable basis." *Federal Trade Commission v. Alcoholism Cure Corporation,*, 2011 WL 13137951, at *26 (M.D. Fla. Sept. 16, 2011). "Where advertisers lack a reasonable basis, their advertisements are deceptive as a matter of law" *Id.* Here, in contrast, Plaintiff has not alleged that Straight Arrow had no reasonable basis for representing that the Shampoo is safe and effective. To

the contrary, it can be inferred from Plaintiff's complaint that the Shampoo is effective for the overwhelming majority of the population that is not allergic to formaldehyde. Specifically, the *de Groot* article relied on by Plaintiff noted that only six out of 501 individuals in the authors' initial study had a positive reaction to DMDM hydantoin – and two of those six turned out to be false positives.[4]

Along these same lines, Plaintiff's claim fails because she has not plausibly alleged that the Shampoo contains DMDM hydantoin or formaldehyde in a high enough concentration to make it objectively unsafe or not gentle, meaning she has not plausibly alleged that the statements at issue are false.  The Centers for Disease Control Agency for Toxic Substances and Disease Registration, a federal public health agency of the U.S. Department of Health and Human Services, explains that formaldehyde is a "common chemical in our environment" that exists in household products ranging from manufactured wood products such as cabinets and furniture to glues, paints, cosmetics, and detergents, among other things.[5] Given the large number and variety of consumer products that contain DMDM hydantoin or otherwise release formaldehyde – including not just manufactured products but also items as simple as apples and pears – the mere allegation that the Shampoo releases a small amount of formaldehyde does not, without more, plausibly demonstrate that it is objectively unsafe or not gentle. *See Iqbal,* 556 U.S at 678 (2009)("When a complaint pleads facts that are 'merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'")(citation and internal marks omitted). Accordingly, Plaintiff has not plausibly alleged that the marketing statements at issue are false, and each of her claims should be dismissed.

---

[4] Patch test reactivity to DMDM hydantoin, Relationship to formaldehyde allergy." By Anton C. DeGroot, Theodoor Van Joost, Jan D. Bos, Harrie L.M. Van Der Meeren, and J. Willem Weyland (*Contact Dermatitis,* 1998, 18:197-201, p. 200).

[5] https://www.atsdr.cdc.gov/formaldehyde/ (last visited October 27, 2021)

Finally, Plaintiff concedes that Straight Arrow properly disclosed on its label that the Shampoo contained DMDM hydantoin. (Dkt. # 28, ¶ 10). This provides yet another basis for dismissal. *See, e.g., Beth Israel Medical Center v. Verizon Business Network Services, Inc.*, Case No. 11 Civ. 4509(RJS), 2013 WL 1285210, at * 7 (S.D.N.Y. Mar. 18, 2013)("Ordinarily, when the alleged deceptive act or practice is fully disclosed to a plaintiff, the 'deception' cannot amount to a materially misleading act or practice under Section 349.").

## B. Plaintiff's Claims Each Fail For Additional Reasons As Well.

### 1. New York Law Bars Plaintiff's Unjust Enrichment Claim (Count VII)

Plaintiff's unjust enrichment claim is duplicative of her fraud and statutory claims under N.Y. Gen. Bus. Law §§ 349 and 350 and should be rejected for that reason as well.  Under New York law, unjust enrichment claims are "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Silva v. Hornell Brewing Co.*, No. 20-CV-756, 2020 WL 4586394, at *6–7 (E.D.N.Y. Aug. 10, 2020) (quoting *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015)).  "The unjust enrichment claim cause of action is not a catch-all . . . to be used when others fail."  *Id.* at * 6 (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).  Nor is it "available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Id.*  Consequently, district courts in the Second Circuit "have dismissed unjust enrichment claims when they have relied on the same facts as the plaintiffs' other asserted causes of action." *Id.*; *see also*, e.g., *Price v. L'Oréal USA, Inc.*, 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016).

Courts have specifically applied this bar in the context of unjust enrichment claims based on the same underlying facts as claims under N.Y. Gen. Bus. Law §§ 349 and 350. In *Silva*, for example, the Court dismissed the plaintiff's unjust enrichment claims as duplicative of her §§ 349 and 350 claims because they "arise out [of] identical facts: the defendants' alleged misrepresentation on the Product packaging." *Id.* Here, Plaintiff's unjust enrichment claim is similarly based on the same wrongful conduct as her fraud claim and statutory claims under N.Y. Gen. Bus. Law §§ 349 and 350. In particular, Plaintiff relies on the same conduct and theory of liability that provides the basis for her fraud and statutory claims. *See* Compl., ¶¶ 161-162 (indicating that Plaintiff's unjust enrichment claim is based on Defendant's allegedly "mislabeled products" which were "misleading to consumers"). Plaintiff pleads no additional facts in support of her claim for unjust enrichment. Thus, as in *Silva*, Plaintiff's unjust enrichment claim "merely duplicates [her] other claims" and should be dismissed. *See also Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 474 (S.D.N.Y. 2020) (dismissing plaintiffs' unjust enrichment claims in misleading product labeling case because the claims "relie[d] on the same factual allegations and the same theory of liability" and was "entirely duplicative of their other twelve theories of recovery").

### 2. *Plaintiff's Breach of Warranty Claims Fails Because She Lacks Privity with Straight Arrow And Because She Never Requested a Refund (Counts I and II).*

Plaintiff purchased the Shampoo from American Outlet, a brick-and-mortar store in Manhattan – not directly from Straight Arrow. (Dkt. # 28, ¶ 103). This lack of contractual privity between Plaintiff and Straight Arrow defeats her breach of warranty claims under New York law.

"Privity is normally 'an essential element of a cause of action for express warranty." *DiBartolo v. Abbott Laboratories*, 914 F.Supp.2d 601, 624 (S.D.N.Y 2012), quoting *Carcone v. Gordon Hearing & Air Conditioning Co.*, 212 A.D. 2d, 1017, 1018 (N.Y.App.Div. 4th Dep't

1995).[6]   The U.C.C., as adopted by New York, contains an exception where the plaintiff is a foreseeable user of the product seeks to recover based on personal injury. *Id.* However, the exception does not apply where the plaintiff has "pleaded solely economic injury." *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 290 (S.D.N.Y. 2014).

Here, Plaintiff was a foreseeable user of the product and has alleged that the product caused her to suffer from hair loss and scalp irritation. However, Plaintiff pointedly does *not* seek to recover based on any personal injury. Instead, Plaintiff has expressly asserted an economic injury only. In her first breach of warranty count, Plaintiff states: "As a result of Defendant's breach of warranty, Plaintiff and the Class have been damaged in the amount of the purchase prices of the Products and any other damages allowable by law." (Dkt. # 28, ¶ 139). Similarly, in her second breach of warranty count, Plaintiff alleges that she and the New York Subclass Members "were harmed because they would not have purchased the Products if they had known the truth about the Products." (Id., ¶ 148).

Since Plaintiff asserts only her economic injury, the privity requirement imposed by New York law applies and bars Plaintiff's breach of warranty claims.

Plaintiff's warranty claims also fail because she did not avail herself of Straight Arrow's money back guarantee – which would have fully remediated her complaint, given that she asserts only economic injury. The Shampoo bottle expressly stated: "SATISFACTORY PERFORMANCE GUARANTEED. Comments or questions? Write or call " and provided contact information. (Dkt. # 28, ¶10). If Plaintiff truly believed she did not receive the basis of her bargain,

---

[6] This is a split of authority among federal courts as to whether the privity requirement in the U.C.C. applies in New York in light of the New York Court of Appeals' opinion in *Randy Knitwear, Inc. v. American Cyanamid Co.*, 181 N.E.2d 399, 402-404 (N.Y. 1962). *See, e.g., Suarez v. Natural Living , Inc.*, 2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019). However, the better-reasoned line of cases explains that *Randy Knitwear* pre-dated New York's adoption of the U.C.C. and the adoption of the U.C.C. thereby displaced *Randy Knitwear* as the law of New York. *See, e.g., Ebin v. Kangadis Food Inc.*, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013).

she had full recourse available to her by simply asking for a refund. However, Plaintiff does not plead that she ever attempted to take advantage of this opportunity. In other words, Plaintiff's economic injury – the only injury she asserts – is illusory. Accordingly, Plaintiff lacks standing to bring a breach of warranty claim, and the claim should be dismissed on that basis. *See, e.g., Wiegel v. Stork Craft Mfg., Inc.,* 891 F.Supp.2d 941, 943–44 (N.D.Ill.2012) (plaintiff did not have standing for breach of refund policy where plaintiff did not seek refund and did not allege that she was misled into believing she could not obtain a refund). *See also Nasca v. GC Services Ltd. Partnership,*2002 WL 31040647, at *2 (S.D.N.Y. Sept. 12, 2002), quoting *Holstein v. City of Chicago,* 29 F.3d 1145, 1147 (7th Cir.1994). ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate and a plaintiff who refuses to acknowledge this loses outright, under Fed.R.Civ.P. 12(b)(1), because he has no remaining stake); *McCauley v. Trans Union, L.L.C.,* 402 F.3d 340, 341 (2d Cir. 2005)(" We have held that the federal courts lack jurisdiction in a case because of mootness when the parties lack a legally cognizable interest in the outcome…. plaintiff is not entitled to "pursue litigation in which he no longer has an interest merely because this could benefit others)(citations omitted)

   **3.** ***Plaintiff Cannot State Claims Under The Consumer Fraud Acts or For Fraud (Counts III-VI) Because No Reasonable Consumer Would Have Been Misled By The Statements At Issue.***

   Regardless of whether the statements at issue were literally false, no reasonable consumer would have been misled by them because no reasonable consumer would believe that a cosmetic product is 100% hypoallergenic simply because the marketing material calls it "gentle." *McAteer*, 2018 WL 3597675, at *5. To state a claim under New York General Business Law § 349, a Plaintiff must show that "(1) defendant has engaged in an act or practice that is deceptive or misleading in a material way, and (2) plaintiff has been injured by reason thereof." *S.Q.K.F.C., Inc. v. Bell*

*Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996). The same elements are required for a claim under N.Y. Gen. Bus. Law § 350. *Wurtzburger v. Ky. Fried Chicken,* WL 6416296, at *2 (S.D.N.Y. Dec. 13, 2017) (citing *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1, 774 N.E.2d 1190 (2002)). Plaintiff's common law fraud claim also requires her to show that Straight Arrow made representations that were materially misleading, among other things.[7]

Thus, to defeat a motion to dismiss consumer fraud claims under New York law, a plaintiff must establish that the "allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Id.* Plaintiff cannot survive this inquiry here as she has not identified any marketing statements that would have misled a reasonable consumer.

"Ordinarily, when the alleged deceptive act or practice is fully disclosed to a plaintiff, the "deception" cannot amount to a materially misleading act or practice under Section 349." *Beth Israel Medical Center v. Verizon Business Network Services, Inc.*, 2013 WL 1385210, at *7 (S.D.N.Y. Mar. 18, 2013). *See also Rodriguez v. Cheesecake Factory Incorporated*, 2017 WL 6541439, at *3 (S.D.N.Y. Aug. 11, 2017)(collecting cases). Here, Plaintiff freely admits that Straight Arrow fully disclosed to her than the Shampoo contained DMDM hydantoin. Any reasonable consumer with a known allergy to formaldehyde or DMDM hydantoin would review

---

[7] Plaintiff must go further in order to establish a common law fraud claim, which requires: "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015).

the ingredient list and avoid purchasing the product, and any individual with an *unknown* allergy would not gain anything from the warning Plaintiff claims should have been provided.

In any event, reasonable consumers understand that products may contain ingredients which could "sensitize" the skin or have other negative effects. *See, e.g., Rugg v. Johnson & Johnson*,  2018 WL 3023493, at *3 (N.D. Cal. June 18, 2018), *Souter v. Edgewell Personal Care Co.*, 2021 WL 3892670, at *6 (S.D. Cal. June 7, 2021)("No reasonable consumer would read…'gentle' to mean that it is completely free of ingredients that can cause an allergic reaction.").

In addition, as discussed above, the de Groot study cited by Plaintiff indicates that only six out of 501 test subjects showed a positive reaction to DMDM hydantoin, and two were false positives. De Groot, 1988 (Exhibit A, p. 4). The statements at issue cannot be considered false or misleading because, even taking the allegations in Plaintiff's Amended Complaint as true, the statements at issue were *true* for the 99% or so of the population that suffers no adverse effects from DMDM hydantoin. New York law provides that a supplier "owes no special duty of warning to the unknown few who constitute a mere microscopic fraction of potential users who may suffer some allergic reaction not common to the ordinary or normal person." *Daley v. McNeil Consumer Products Co., a div. of McNeil-PPC, Inc.*, 164 F.Supp.367, 373 (S.D.N.Y. 2001), quoting *Kaempfe v. Lehn & Fink Prods. Corp.*, 21 A.D.2d 197, 200, (N.Y. 1st App. Dep't 1964). That standard bars Plaintiff's claim here, where the literature cited in her own Complaint indicates the reaction at issue occurs in roughly 1% of the population (at a concentration of DMDM hydantoin higher than what is used in the Shampoo).

Finally, New York law provides that a reasonable consumer would not rely on subjective statements about quality or fitness. "Value, quality, fitness, success, are usually understood as

meaning no more than that the objects conform with the declarant's individual yardstick in such matters." *Stern v. Satra Corp.*, 539 F.2d 1305, 1308 (2d Cir. 1976). "While he may make it clear that his reference is to some commonly accepted measure, ordinarily he does not, and his hearer takes it for more at his peril." *Id.*  Because the statements cited by Plaintiff about the Shampoo relate to such matters, Plaintiff cannot reasonably have relied on them and her Amended Complaint should be dismissed.

> **4.** **Plaintiff's Fraud Claim Fails Because She Has Not Sufficiently Alleged that Straight Arrow Intended to Deceive.**

In addition to a material misrepresentation of fact, Plaintiff's fraud claim requires her to plausibly allege that Straight Arrow intended to deceive her. *Putnam Advisory Co.*, 783 F.3d at 402. However, Plaintiff has not even plausibly alleged that Straight Arrow *knew* about the alleged concerns with DMDM hydantoin, let alone that Straight Arrow knowingly misled her with respect to them. Instead, Plaintiff makes the conclusory allegation that Straight Arrow "knew or should have known that DMDM hydantoin can cause or contribute to hair loss and scalp irritation when used as a preservative in hair products, including shampoo and conditioner products." (Dkt. # 28, ¶ 11). But the only support she provides for this assertion is a general statement in the Frequently Asked Questions section of its website that the Shampoo can be used safely on humans and animals. (Id. ¶ 13). This statement says nothing at all about DMDM hydantoin and provides no basis for concluding that Straight Arrow "knew" it is unsafe.  In particular, there is no allegations that the concentration of DMDM hydantoin used in the Shampoo exceeded any safety standard established by any country in the world, including the European Union and Japan, or by any trade association in the world. Nor is there any allegation that the amount of formaldehyde in the Shampoo exceed the amount in any number of common household products. Plaintiff's fraud count should be dismissed on this independent basis as well.

### 5.   *Plaintiff Lacks Standing to Seek Injunctive Relief.*

Plaintiff's request for injunctive relief should be dismissed because she  lacks Article III standing to pursue such relief. To satisfy the Constitutional standing requirement under Article III, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015). Plaintiff "must demonstrate standing separately" for each form of relief sought in her complaint.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 185 (2000).

With respect to claims for injunctive relief based on future injuries, such injuries must be "imminent" in order to confer standing, i.e. they must be "certainly impending." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013)(citations omitted). Accordingly, courts in the Second Circuit have held that "there is no Article III standing to maintain a suit seeking injunctive relief in a consumer protection/deception case when plaintiffs plead that they will not buy the product in the future because the plaintiffs are now fully aware of the alleged deception."  *Young v. L'Oreal, Inc.,* 2021 WL 2295625 (S.D.N.Y. May 20, 2021) (citing *Kommer v. Bayer Consumer Health*, 710 Fed. App'x 43 (2d Cir. 2018)).

Even where, as here, a Plaintiff avers that she might purchase the product again in the future, the Second Circuit has still found no standing to seek injunctive relief. "[P]ast purchasers of a consumer product who claim to be deceived by that product's packaging…have, at most, alleged a past harm." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). [E]ven if they do purchase [the product] again, there is no reason to believe [they] will incur a harm new." *Id.* "Supposing that they have been deceived by the product's packaging once, they will not again be

under the illusion" they claim they were under. *Id.* Instead, if they do buy the product again, "they will be doing so with exactly the level of information they claim they were owed from the beginning." *Id.*

Here, Plaintiff alleges that had she "known the truth about the Products, [she] would not have purchased the Products." (Dkt. # 28, ¶ 137, 148, 184). Since she now "knows the truth," any future purchase would be a knowingly-made decision that could not provide standing to sue. This conclusion cannot be avoided by Plaintiff's amendment to her Complaint, which indicates she would consider purchasing the Shampoo again if the formulation were to change – to the contrary, this simply reinforces that any future purchase decision would now be a "knowing" one with no possibility that Plaintiff is deceived. (See Dkt. # 28, ¶102).Thus. Plaintiff will "no longer be under the illusion" she alleges she was under when she purchased the Shampoo in the past, and there is "no reason to believe [she] will incur a harm anew." *Berni* v. 964 F.3d at 147

Moreover, Plaintiff's indication that she would "consider" purchasing the Shampoo in the future does not establish an affirmative desire or intent to purchase it, and thereby fails to establish the kind of "imminent" injury required under *Clapper. See Wallace v. SharkNinja Operating, LLC*, 2020 WL 1139649, at *14 (N.D. Cal. Mar. 9, 2020). *See also Rugg*, 2018 WL 3023493, at *7. "As the Ninth Circuit has explained, a ''some day' intention—without any description of concrete plans, or indeed even any specification of when the some day will be—does not support a finding of the 'actual or imminent' injury that Article III requires.'" *Wallace*, 2020 WL 1139649, at *14, quoting *Lanovaz v. Twinings N. Am. Inc.*, 726 Fed. App'x 590, 591 (9th Cir. 2018).

## IV.      CONCLUSION

Plaintiff cannot circumvent the clear preemption clause of the FDCA by re-casting her duty to warn claim as a consumer fraud or breach of warranty claim, both because the claim is still preempted and because she has not identified any actionable misrepresentations – intentional or otherwise. Having been given an opportunity to amend her Complaint but still failing to state a viable cause of action, Plaintiff is not entitled to try for a third time. Instead, Plaintiff's Complaint should be dismissed with prejudice.


Dated: October 29, 2021

                                         Respectfully submitted,

                                By:     /s/ Ronald D.  Balfour
                                      One of the Attorneys for Defendant,
                                      STRAIGHT ARROW PRODUCTS, INC.

Eric L. Samore IL ARDC # 6181345 (*pro hac vice*)
Ronald D.  Balfour NY Bar Number 5031315
Kathryn V. Long IL ARDC #6299363 (*pro hac vice*)
SMITHAMUNDSEN LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200